IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Austin Associates, LLC, and Investment Bank Services, Inc., <br><br> PLAINTIFFS <br><br> v. <br><br> Business Carolina, Inc., <br><br> DEFENDANT | Case No. 3:15-cv-2689-TLW <br><br><br> **ORDER** |

This matter comes before the Court on Plaintiff Austin Associates, LLC's ("Austin") Motion for Summary Judgment (ECF No. 30) and Defendant Business Carolina, Inc.'s ("BCI") Cross-Motion for Summary Judgment on the issue of attorneys' fees (ECF No. 34). The parties have fully briefed the issues (ECF Nos. 30-1, 34, 36, 37, 38-1, and 39-1), and the motions are now ripe for disposition. For the reasons set forth below, Austin's motion is denied, and BCI's motion on the issue of attorneys' fees is granted.

## **BACKGROUND**

This lawsuit arises out of a contractual dispute as to whether BCI is obligated to pay Austin a Retainer, Advisory Fee, and Success Fee totaling $185,000 under the terms of an engagement letter dated April 10, 2013 (the "Agreement"). (*See* ECF No. 1-1, Ex. A.) Pursuant to the Agreement, Austin was to provide certain financial services in connection with a planned sale of BCI's assets, and BCI would compensate Austin according to a schedule of fees.

In April-July 2013, Austin prepared and delivered a valuation of BCI's assets and participated in several meetings with BCI. As provided in the Agreement, BCI paid Austin a $15,000 Valuation Fee. Shortly thereafter, BCI allegedly engaged a different consulting firm (D'Alberto & Associates, LLC) to provide another valuation, and ceased substantive communications with Austin.

In May 2014, BCI filed a press release announcing a pending sale of its assets to a third

party. Upon seeing the press release, Austin invoiced BCI $35,000 for a Retainer and Advisory Fee, and indicated that a Success Fee in the amount of $150,000 would become payable upon the closure of the Transaction.[1] BCI refused to pay the invoice, asserting that it paid the Valuation Fee when it became due, and that it did not owe Austin for a Retainer, Advisory Fee, or Success Fee because BCI did not direct Austin to provide any additional Financial Advisory Services.[2]

Thereafter, Austin filed this lawsuit, and now moves for summary judgment, seeking to recover $185,000, the total scheduled fees listed in the Agreement (less the $15,000 Valuation Fee already paid). Austin asserts that under the Agreement, BCI's obligation to pay the additional scheduled fees was not contingent upon Austin's *provision of services*—rather, it argues that BCI was obligated to pay Austin upon the *occurrence of certain events* related to the Transaction. Austin also asserts that it provided at least one additional Financial Advisory Service. Conversely, BCI asserts that it paid for the valuation rendered by Austin, and no other payments are due because it neither requested nor received any additional Financial Advisory Services from Austin.

The parties also dispute, and have filed cross-motions for summary judgment on, whether the indemnification provision contained in the Agreement obligates BCI to pay the attorneys' fees and legal expenses Austin incurred in this lawsuit.

## LEGAL STANDARD

*Summary Judgment – Rule 56*

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that

---

[1] A "Transaction" is defined by the Agreement as a sale of substantially all of the assets of BCI. (*See* Agreement, p. 2; ECF No. 1-1, Ex. A.)
[2] The Agreement contains a list of Financial Advisory Services that Austin would provide at BCI's direction. (*Id.*)

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* Although the moving party bears this initial burden, the nonmoving party must then produce specific facts showing that there is a genuine issue for trial. *Anderson*, 447 U.S. at 250. In considering a party's motion for summary judgment, the court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

## **DISCUSSION**

The pending motions place two primary issues before the Court. First, whether, as a matter of law, BCI is obligated to pay the Retainer, Advisory Fee, and Success Fee. Second, whether the indemnification provision contained in the Agreement obligates BCI to pay the attorneys' fees and legal expenses Austin incurred in prosecuting this action. Each issue is discussed in turn below.

### I. **Payment of the Retainer, Advisory Fee, and Success Fee**

In its motion for summary judgment, Austin argues that the Agreement unambiguously requires BCI to pay each fee listed based upon the occurrence of certain events related to the Transaction, regardless of whether Austin actually provided a Financial Advisory Service. (ECF No. 36, pp. 6-11.) For example, Austin asserts that BCI was obligated to pay a $10,000 retainer upon BCI's "decision to proceed with Financial Advisory Services," even if another consultant

3

provided the services. (ECF No. 36, p. 6.) Thus, Austin would have the Court conclude, as a matter of law, that BCI was obligated to pay each additional fee listed—a total of $185,000—regardless of whether Austin performed any work beyond the valuation that was undisputedly requested, received, and paid by BCI. Austin relies on two decisions from New York district courts that, it claims, support its position that investment advisory contracts calling for payment upon the closing of a transaction are enforceable regardless of whether the advising firm was involved in the transaction: *PaineWebber Inc. v. Campeau Corp.*, 670 F. Supp. 100 (S.D.N.Y. 1987) and *CIBC World Markets Corp. v. TechTrader, Inc.*, 183 F. Supp. 2d 605 (S.D.N.Y. 2001).

BCI counters that the Agreement is ambiguous with regard to what conditions trigger an obligation to pay the additional fees. (ECF No. 34, p. 8.) Additionally, BCI asserts that there is a factual question regarding whether it directed Austin to perform any of the Financial Advisory Services listed (which it denies), and that the Agreement should be interpreted to make this a condition precedent to its obligation to pay the Retainer, Advisory Fee, and Success Fee. (ECF No. 34, pp. 10-14.) BCI explains that the cases cited by Austin are distinguishable because those cases interpreted "exclusive" consulting agreements, whereas BCI's engagement of Austin was not exclusive. In support of its position, BCI cites several cases where courts found that questions of fact existed with regard to the enforcement of payment provisions in consulting contracts: *Signal Hill Capital Group LLC v. CMO Int'l ApS*, 2014 WL 2738561 (D. Md. June 16, 2014); *CV Holdings, LLC v. Artisan Advisory, LLC*, 780 N.Y.S.2d 425 (N.Y. App. Div. 2004); and, *Cato Capital LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607 (D. Del. 2014), *aff'd*, No. 14-4244, 2015 WL 4978706 (3d Cir. Aug. 21, 2015).

Under both South Carolina and Ohio law, a contract is ambiguous when it is capable of more than one meaning, or when its meaning is unclear. *Ellie Inc. v. Miccichi*, 594 S.E.2d 485, 493 (Ct. App. 2004) (applying South Carolina law); *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (applying Ohio law).[3]

The Court has carefully analyzed the Agreement and concludes that an uncertainty or ambiguity exists regarding what conditions trigger BCI's obligation to pay the Retainer, Advisory Fee, and Success Fee. Clearly there is a debate regarding the obligations of the parties, and this aspect of the Agreement is capable of more than one reasonable interpretation. Additionally, there are questions of fact as to whether BCI requested, or Austin provided, additional Financial Advisory Services, which could be interpreted as conditions precedent to BCI's obligation to pay the additional fees. When all facts and reasonable inferences are viewed in the light most favorable to the nonmoving party, these issues preclude summary judgment on the breach of contract claim.

Therefore, Austin's motion for summary judgment on the issue of payment of the Retainer, Advisory Fee, and Success Fee is denied.

## II. Indemnification of Attorneys' Fees

The parties filed cross-motions for summary judgment on the issue of whether BCI is obligated to reimburse Austin's attorneys' fees and legal expenses incurred in prosecuting this lawsuit. The Agreement contains the following indemnification provision, which is the alleged source of BCI's obligation:

> [BCI] shall indemnify the Indemnified Parties, to the maximum extent permitted by law and hold the Indemnified Parties harmless from any losses, actions, claims, damages, expenses, or liabilities

---

[3] The Court notes that the parties agree that both Ohio and South Carolina follow the same analysis in determining whether a contract is ambiguous, as demonstrated by the cases cited.

5

> resulting from third party claims related to or arising out of any acts or decisions made by any of the Indemnified Parties in good faith and in the course of this engagement and in a manner reasonably believed to be in the best interest of [BCI]. *[BCI] will reimburse the Indemnified Parties for all of their time and reasonable expenses as they are incurred in connection with investigating or defending any such actions or claims and/or in connection with any legal or similar action related to this engagement whether or not any of the Indemnified Parties are named parties in the action (for example, if an Indemnified Party provides deposition testimony in such an action).* [BCI]'s obligation under this paragraph shall remain in full force and effect following the completion, expiration or termination of this engagement.

(ECF No. 1-1, p. 14, ¶ 3 (emphasis added).) [4]

While the parties agree that the first sentence of this provision describes BCI's indemnity obligation arising out of third-party claims (*see* ECF No. 36 at 12, and ECF No. 34 at 15), they disagree as to whether the second sentence (italicized above) expands the obligation to this lawsuit.

Austin urges that the second sentence obligates BCI to pay Austin's fees and legal expenses for this action. It asserts that this sentence should be read as follows: "[BCI] will reimburse the Indemnified Parties for all of their time and expenses . . . in connection with any legal or similar action related to this engagement whether or not any of the Indemnified Parties are named parties in the action[.]" (ECF No. 30-1 at 20.) It asserts that the sentence "precisely describes this action" (ECF No. 39-1 at 6), and "clearly encompasses attorneys' fees and litigation costs, which are a natural and foreseeable expense in any action taken to enforce the agreement" (ECF No. 30-1 at 20). Austin represents that "[t]he only legal concept at issue is the enforceability of contractual attorneys' fee provisions." (ECF No. 36 at 13.) On this point,

---

[4] The contract defines "Indemnified Parties" as Austin Associates, Investment Bank Services, Inc., "and their directors, officers, members, employees, and independent contractors[.]"

Austin asserts that both South Carolina and Ohio courts agree that contractual attorneys' fees provisions are enforceable, as demonstrated by *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 408 (Ohio 2009) and *Blumberg v. Nealco, Inc.*, 427 S.E.2d 659, 660 (S.C. 1993).

BCI counters that the provision at issue protects Austin from third-party claims, but it does not permit Austin to recover attorneys' fees in an action between the contracting parties, such as this lawsuit. (ECF No. 34, pp. 15-16.) BCI asserts that the second sentence "simply clarifies that BCI is responsible for reimbursing the Indemnified Parties even in those situations when the indemnified parties are not named parties in the action." (ECF No. 37 at 2.) In support of its position, BCI relies primarily on two cases where courts declined to require a party to reimburse attorneys' fees pursuant to an indemnification clause in a dispute between the contracting parties: *Smoak v. Carpenter Enterprises, Inc.*, 460 S.E.2d 381, 383 (S.C. 1995) (holding that attorneys' fees were not recoverable under an indemnification clause where there was "no other provision in the parties' agreement specifically dealing with the recovery of attorney's fees by [s]ellers in an action between the parties") and *Oppenheimer & Co. Inc. v. Metal Management, Inc.*, No. 08-cv-3697-LTS-FM, 2011 WL 2462588 (S.D.N.Y. June 20, 2011) (same outcome under New York law).

BCI also observes that the adoption of Austin's position would result in an "absurd" result because there is no language that would condition Austin's recovery of attorneys' fees upon its prevailing in this action—thus, according to Austin's interpretation, it would be entitled to recover its legal expenses even if it lost this action to enforce the contract. (ECF No. 37 at 3.)

The Court has carefully considered the parties' arguments, the legal authorities cited, and the indemnification provision at issue. Neither party asserts, nor does the Court find, that the indemnification provision is ambiguous. Under both South Carolina and Ohio law, the Court

7

undertakes the interpretation of this unambiguous portion of the Agreement as a matter of law. *See Lee v. Univ. of S.C.*, 757 S.E.2d 394, 397 (S.C. 2014); *Savedoff*, 524 F.3d at 763.

The Court concludes that the provision at issue cannot be reasonably interpreted to obligate BCI to reimburse Austin's legal fees and expenses arising from this lawsuit. BCI asserts that the provision protects Austin "from any third-party claims." (ECF No. 34, p. 15.) The Court agrees. Additionally, the Court agrees with BCI that the second sentence clarifies that even if an Indemnified Party is not a *named* party to a legal action, BCI still has an obligation to reimburse it for "reasonable expenses." This conclusion is supported by the example of such a scenario that is noted in the provision: "if an Indemnified Party provides deposition testimony[.]" (ECF No. 1-1, p. 14, ¶ 3.) The provision does not, however, specifically address the recovery of attorneys' fees in an action between the contracting parties, as would be necessary to obligate BCI to pay Austin's attorneys' fees here. *See Smoak*, 460 S.E.2d at 383. Thus, the indemnification provision falls short of overcoming the general rule that each party is responsible for its own legal fees and costs in this action to enforce the contract.

The Court also notes that the authorities cited by Austin focus on the *enforceability* of attorneys' fees provisions, not on the interpretation of contractual language concerning attorneys' fees. *See Blumberg*, 427 S.E.2d at 660 (there was "no dispute that the lease provided for attorney's fees" and the "dispute center[ed] around whether the recovery of attorney's fees was waived because *no evidence was offered to establish if any fees were incurred*" (emphasis added)); *Wilborn*, 906 N.E.2d at 408 (holding "that a provision in a residential-mortgage contract requiring a defaulting borrower to pay a lender's reasonable attorney fees as a condition of terminating pending lender-initiated foreclosure proceedings on a defaulted loan and reinstating the loan is *not contrary to Ohio statutory or decisional law or against Ohio public policy*"

(emphasis added)). These authorities do not expand BCI's obligation past what is required by the plain language of the Agreement.

Therefore, on the issue of whether BCI is obligated to pay Austin's attorneys' fees and legal expenses, BCI is entitled to summary judgment.

## **CONCLUSION**

For the reasons set forth above, Austin's Motion for Summary Judgment (ECF No. 30) is DENIED, and BCI's Cross-Motion for Summary Judgment on the issue of attorneys' fees (ECF No. 34) is GRANTED.

With these dispositive motions decided, this case is ready for mediation and trial. The parties are directed to proceed with mediation and to be prepared to select a jury on April 4, 2016, if the case is not resolved. Trial of this case will begin at 9:30 a.m. on Tuesday, April 5, 2016. Any request for a delay in the trial date shall be filed within 10 days of entry of this Order. A request for delay will not be granted absent compelling circumstances.

IT IS SO ORDERED.

*s/ Terry L. Wooten*
Chief United States District Judge

January 28, 2016
Columbia, South Carolina